Shackelford, J.,
delivered the opinion of the Court.
This suit was commenced before a Justice of the Peace to recover a gun, and was taken by appeal to the Circuit Court of the County of Cocke.
*215 The case was submitted to the Circuit Judge upon an agreed State of facts. The plaintiff in error was appointed, in 1862, by Isham G. Harris, then acting Governor of the State of Tennessee, under an Act passed by the Legislature the 18th of November, 1861, and duly commissioned, under the provisions of that Act, to take from the citizens of the county, their guns. Under this authority he seized the gun of the defendant in error, and carried it off; the gun being valued at $25. His Honor was of opinion the law was in violation of the Constitution, the plaintiff in error a trespasser, and a judgment was rendered against him; from which there was an appeal to this Court.
The case presents, for our consideration, the validity of the Act passed by the Legislature of the State, after the attempt to throw off the allegiance of the citizens to the United States, on the 6th day of May, 1861, and the effect of the adoption of the Constitutional Amendments and Schedule, on the 22d of February, 1865. It is insisted for the plaintiff in error, that if, by force or otherwise, the power of the Government of the United States to protect the citizens was withdrawn, the allegiance of the citizens was suspended, annulled, or in abeyance, and he was left to the absolute control and demand of the State; that the State, as a sovereign under the Constitution, has a right to take the property of a citizen, by and with the consent of his representatives, and having that consent, the Governor, as the executive, was bound to execute the law, and of right to issue the commission, and it is the act of the State for which the *216 plaintiff in error is not individually liable. These questions have been decided by tribunals from which there is no appeal.
The right of a State to withdraw from the Federal Union, and of her citizens to throw off their allegiance to the General Government, is a question unnecessary for us to discuss at length in the determination of the questions presented in this record.
The Constitution of the United States was adopted by the whole people; and upon its adoption became the paramount law. The framers of that instrument were the patriots and statesmen who lived under the old Confederation, saw the evils of that system of government, and in the formation of the Constitution, carefully endeavored to guard against them.
It was submitted to the whole people, and ratified by them, and no citizen can voluntarily throw off the allegiance cast upon him, while he remains within the States or Territories over which the Government has jurisdiction. Statesmen have differed, since the organization of the Government, on the rights' of a State to withdraw from the Federal Union. The attempt to exercise it by part of the States, culminated in the late civil war; the authorities controlling the Federal Government triumphed, and the question is, we hope, finally and forever settled by that tribunal from which there is no appeal. Upon the attempt of this State to withdraw from the Union, the Legislature met and passed various Acts; among them An Act, entitled “An Act to establish an Ordnance Bureau, and for other purposes,” passed on the 20th of No *217 vember, 1861. The 18th, 19th and 21st sections of that Act authorized the Governor of the State to commission persons in each county to collect the arms of the citizens. Heavy penalties were imposed upon those who refused to yield them up. In the passage of this Act, the 26th section of the Bill of Rights, which provides, “that the free white men of this State have a right to keep and bear arms for the common defense,” was utterly disregarded. This is the first attempt, in the history of the Anglo-Saxon race, of which we are apprised, to disarm the people by legislation.
The motives which induced the passage of the Act, we will leave an enlightened public to decide, when passion has passed and reason resumed her control. How far the Acts of this Legislature, which assembled without the sanction of the oath prescribed in article 10th, sec. 2d, of the Constitution of the State, which requires each member of the Legislature, before he takes his seat, to take an oath to support the Constitution of the United States, etc., etc., are valid, it is unnecessary for us to decide, as it has been settled by the people, acting in their sovereign right.
The constitutional amendments became a part of the Constitution of the State, and the Schedule thereto annexed,.for all the purposes sought by the ratification, became equally binding on the Courts, as to the purposes therein expressed. Section 5th of the Schedule, provides: “All laws, ordinances, and resolutions, as well as all acts done in pursuance thereof, under the authority of the usurped State Government, after the *218 declared independence of the State of Tennessee, on or after tbe 6th of May, 1861, were unconstitutional, null and void from the beginning.” No one has ever doubted the. right. According to the institutions of this country, the sovereignty of every State resides in the people of the State, and they may alter or change their form of Grovernment at their pleasure; but whether they have changed it or not, by abolishing the old government, and establishing a new one, is a question to be settled by the political power. The Courts are bound to take notice of its decisions, and follow it: 7 Howard’s Reports, Luther vs. Berden, 1.
The people of the State having, in their sovereign character, declared the Acts of the Legislature, passed after the 6th of May, null and void from the beginning, it follows, therefore, that the ratification of the Schedule by the people, on the 22d of February, 1865, (the Act under which the plaintiff justified his seizure of the gun of the defendant in error,) was null and void; and he cannot defend himself by virtue of the commission under which he acted, nor shield himself from the responsibility, by the provisions of the Acts of the Legislature, passed after the 6th of May, 1861. It follows, the defendant was a trespasser, and is responsible for the property taken.
The judgment of the Court will be affirmed.